## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NICHOEL HILL, *et al.*                    *

                                                            *

v.                                                          *          Civil Action No.   20-cv-3746

                                                            *

JASON HUNT, *et al.*                    *
                  .                                  *
                                       ***********

## MEMORANDUM

Pending before the court is a twenty-count complaint filed by Plaintiffs Nichoel and William Hill (collectively, "the Hills") against Brianna Carullo ("Ms. Carullo"); Parkville Nazarene Christian Daycare, Inc. ("Parkville Nazarene"); the State of Maryland; Baltimore County, Maryland; the Baltimore County Police Department ("BCPD"); BCPD Detective Jason Hunt ("Detective Hunt"); and Baltimore County Department of Social Services ("DSS") employees Chastity Randall ("Ms. Randall") and Kathryn Cawthon ("Ms. Cawthon"). (ECF 28, First Am. Compl.).[1] The complaint alleges a variety of torts stemming from the arrest of Ms. Hill on April 27, 2018, on charges of child abuse and assault that were later dropped. (ECF 28, First Am. Compl., ¶ 159; ECF 32-4, Statement of Charges).

On November 17, 2020, the Hills filed suit in the Circuit Court for Baltimore County against the various defendants.[2] (ECF 1-5, State Compl.). The State of Maryland, Ms. Randall, and

---

[1] Nichoel Hill appears individually and as Next Friend of her minor child, Doe, while William Hill appears only as Next Friend of his minor child, Doe.

[2] The Hills also named the Maryland Department of Human Services, Baltimore County Department of Social Services, Baltimore County Child Protective Services, the Child Advocacy Center, and DSS Doctor Michelle Chudow in their original complaint. (*Id.*). These defendants were later voluntarily dismissed. (ECF 19, Not. Of Dismissal, at 1; ECF 28 at 3).

Ms. Cawthon (the "State defendants") removed the complaint to federal court on December 25, 2020, on the bases of federal question and supplemental jurisdiction. (ECF 1, Not. Of Removal, ¶¶ 4-5). The remaining defendants consented to removal on January 22, 2021. (ECF 15, Consent to Removal).[3] The Hills later amended their complaint. (ECF 28).

Baltimore County, BCPD, and Detective Hunt (the "County defendants"); Parkville Nazarene; and the State defendants filed motions to dismiss. (ECFs 32, 38, and 40 respectively). The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons explained below, the motions will be granted.

## BACKGROUND

This case arises from allegations of child abuse in a daycare that led to the investigation, arrest, and ultimately abandoned prosecution of Nichoel Hill in the first half of 2018. The facts stated herein are drawn from the plaintiffs' first amended complaint and documentation submitted by the parties.

In 2018, Ms. Hill, a resident of Middle River, Maryland, was employed by Parkville Nazarene as a licensed childcare provider. (ECF 28 ¶ 27). Ms. Hill had been an employee of the childcare center since 2007 and had received excellent performance reviews in her capacity as a caregiver. (*Id.* ¶¶ 30-31).

Defendant Brianna Carullo, a former employee of Parkville Nazarene, sent her minor son Alexander Ashton ("Alexander"), a toddler, to the daycare for regular childcare. (*Id.* ¶¶ 17, 35, 38). Over the course of February 2018, a series of three incidents involving Alexander occurred.

---

[3] With the exception of defendant Brianna Carullo, who, according to the docket, has not been served and has not responded to the complaint in any form since its filing.

First, on February 18, 2018, Alexander fell while attending Parkville Nazarene's childcare. (*Id.* ¶¶ 78) After the fall, Alexander was observed to have a slight discoloration on one ear. (*Id.* ¶¶ 78, 80).

Second, on February 22, 2018, Ms. Hill caught Alexander as he lost his balance and was about to fall down a flight of seven to eight stairs. (*Id.* ¶¶ 62-63). There were no witnesses to this incident besides Ms. Hill and the Director of Parkville Nazarene, Erica Bush ("Director Bush"). (*Id.* ¶ 64-65). Ms. Hill states that Director Bush subsequently wrote and signed an affidavit attesting that Ms. Hill prevented serious harm befalling Alexander. (*Id.* ¶ 64). At an unspecified point after this incident, Ms. Hill left her employment at Parkville Nazarene. (*See id.* ¶ 69, 118).

Third, on February 27, 2018, a member of Parkville Nazarene's staff placed Alexander at a table with a child who was known to bite others. (*Id.* ¶ 53). Subsequently, staff noticed Alexander had bite marks on his skin. (*Id.* ¶¶ 54, 56). Ms. Hill was not present on the 27th and did not witness this incident, as she asserts that she had left Parkville Nazarene to start her own daycare. (*Id.* ¶¶ 57, 59, 143).

On or about March 2, 2018, Ms. Carullo filed a complaint with the Baltimore County Department of Social Services alleging that Parkville Nazarene was providing inadequate supervision of the children under its care. (*Id.* ¶¶ 33, 35). On March 2nd, Ms. Carullo met with Ms. Randall, a DDS social worker, to discuss the incidents detailed in the complaint, and provided Ms. Randall photographs of the discolored ear. (*Id.* ¶¶ 36, 40, 88). Ms. Randall noticed scratches on Alexander's face, which Ms. Carullo attributed to Alexander scratching his face with his own nails, and a bruise, which Ms. Carullo identified as a bite mark from the February 27th incident. (*Id.* ¶¶ 37-40). The Hills allege that Ms. Carullo additionally falsely told Ms. Randall that Ms. Hill had been fired from Parkville Nazarene as a result of Alexander's near-fall down the stairs on

February 22, 2018. (*Id.* ¶ 69). The Hills further allege that Ms. Randall failed to independently verify this claim before repeating it to DSS Dr. Michelle Chudow ("Dr. Chudow"). (*Id.* ¶ 75).

Ms. Randall showed photographs of what Ms. Carullo purported to be Alexander's discolored ear to Dr. Chudow, who concluded in her report on the complaint that the markings on Alexander's ear may have been caused by a non-accidental pinching or pulling upwards. (*Id.* ¶ 95). The Hills allege that Dr. Chudow then conveyed her opinion on the cause of the discoloration and repeated that Ms. Hill was fired because of the February 22nd incident, again without conducting independent verification, to BCPD Detective Hunt.[4] (*Id.* ¶¶ 75, 103). The Hills additionally allege that Dr. Chudow's supervisor who approved the report, Ms. Cawthon, took no action to independently verify Ms. Carullo's alleged claims regarding Ms. Hill. (*Id.* ¶ 102).

On March 13, 2018, Detective Hunt conducted a follow-up interview with Ms. Carullo to learn more about her son's injuries. (*See* ECF 32-3, Statement of Charges, at 3).[5] Ms. Carullo told Detective Hunt that, on February 16, 2018, she noticed substantial bruising on Alexander's ear. (*Id.*). She informed Detective Hunt that Ms. Hill was assigned to watch Alexander that day, and that she had informed Ms. Carullo that Alexander fell into a table. (*Id.*). Ms. Carullo further told Detective Hunt that the Director Bush had observed Ms. Hill grab and drag Alexander own several stairs and yell at him on February 22, 2018, the day Ms. Hill stated she prevented Alexander from

---

[4] Md Code Regs. 07.02.07.05(D) (2021) provides: "If a local department receives a report of suspected child abuse or neglect alleged to have occurred in Maryland, it shall: (1) Promptly acknowledge receipt of the report in writing to each reporter stating that the local department will take appropriate action; and (2) Immediately notify the local law enforcement agency orally or in writing of any report accepted for a CPS response; and (3) By the end of the next business day following the day of the report, notify law enforcement in writing of the report if the initial notification was communicated orally."

[5] The court may consider Detective Hunt's application for a statement of in assessing the Hills' claims, as it is a document integral to and specifically referenced by the complaint. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

falling. (*Id.* at 3-4). Ms. Carullo advised Detective Hunt that she believed this was why Ms. Hill had been terminated. (*Id.*).

Detective Hunt subsequently attempted to contact Ms. Hill through her attorney, Charles Lamasa ("Mr. Lamasa"), on March 20, 2018. (*Id.* at 4). Mr. Lamasa told Detective Hunt that he would not permit Ms. Hill to provide a statement regarding the incidents. (*Id.* at 4).

On April 24, 2018, Detective Hunt filed an application for Statement of Charges against Ms. Hill. (ECF 28 ¶¶ 104, 106). That day, Ms. Hill was charged with one count of Second Degree Assault of a minor child between February 16 and March 13, 2018, and with one count of Second Degree Child Abuse between February 16 and March 18, 2018. (*Id.*). The court issued a warrant for Ms. Hill's arrest. (*Id.* ¶ 108; ECF 32-5, Arrest Warrant).

On the morning of April 27, 2018, Detective Hunt and other Baltimore County police officers arrested Ms. Hill at her home, in front of Mr. Hill and her minor child Doe. (*Id.* ¶¶ 148-50). On June 1, 2018, a *nolle prosequi* was entered for both pending charges against Ms. Hill. (*Id.* ¶ 157). Thereafter, DSS ruled out Ms. Hill as a child maltreater, finding that she caused no child abuse or neglect. (*Id.* ¶ 160); *see* Md Code Regs. 07.02.26.02(B)(26) (2021).

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to

relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

### I.    Probable Cause

Of the twenty claims Ms. Hill brings against these nine defendants, most turn on whether the Baltimore County Police had probable cause to arrest Ms. Hill on April 27, 2018.

Specifically, Ms. Hill contends that Detective Hunt violated her Fourth Amendment rights by deliberately or recklessly making material or false statements in his warrant affidavit. To succeed on this claim, Ms. Hill must sufficiently allege that Detective Hunt deliberately or "with a reckless disregard for the truth" made material false statements in his affidavit, or omitted material facts known to him with the intent of making the affidavit misleading. *See Miller v. Prince George's Cty., MD*, 475 F.3d 621, 627-28 (4th Cir. 2007). Further, to be "material," an officer's false statements or omissions must be "necessary to the [neutral and disinterested magistrate's] finding of probable cause." *Id.* at 628 (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

No Fourth Amendment claim exists where a reasonable officer would conclude, from a review of the information available to that officer, that probable cause existed at the time he or she made an application for charges to the presiding judicial officer. *District of Columbia v. Wesby*,

138 S. Ct. 577, 586 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); and *Ornelas v. United States*, 517 U.S. 690, 696 (1996)) ("To determine whether an officer had probable cause for an arrest," a court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to 'probable cause'") (citation omitted). "Because probable cause deals with probabilities and depends on the totality of the circumstances . . . it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotations omitted) (citations omitted). Thus, probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal quotations omitted) (citations omitted).

### a) Probable Cause Existed for Ms. Hill's Arrest

The objective test for probable cause has been met in this case. When examining the information available to Detective Hunt at the time of his application for charges on April 24, 2018, the court finds evidence existed that would allow a reasonable detective to have sufficient reason to believe Ms. Hill committed assault, child abuse, or child neglect. The witness statement of Ms. Carullo provided Detective Hunt with a detailed account of multiple incidents placing her injured child with Ms. Hill, his caregiver, at the time of the injuries. The DSS incident report by Dr. Chudow, which indicated that the discoloration on Alexander's ear was consistent with abusive conduct (pinching) while Ms. Hill was Alexander's caregiver, further support a reasonable officer's conclusion that probable cause existed for Ms. Hill's arrest. While blurry, the accompanying photographs provided by Ms. Carullo corroborated her allegations to Detective

Hunt.[6] Together, these facts, as indicated in Detective Hunt's affidavit, create sufficient probable cause to submit an application for Ms. Hill to be charged.

The Hills' additional arguments for why probable cause did not exist are unavailing. First, any argument that the Hills raise that Detective Hunt acted intentionally or recklessly by relying on the witness statements of Ms. Carullo fail. Nowhere in the complaint do the Hills identify why Detective Hunt should have been on notice that Ms. Carullo was providing false or misleading information about Ms. Hill or about her son's injuries, or that she was not a credible witness about her son's physical health. As a police detective, Hunt reasonably assessed Ms. Carullo's credibility and corroborated her allegations with the DSS report and photographs. Further, while it was within Ms. Hill's rights to decline Detective Hunt's interview request during the investigation, doing so meant that Detective Hunt did not have the benefit of any exculpatory information she could have offered at the time.

Next, the fact that the charges against Ms. Hill were *nolle prossed* does not mean that probable cause did not exist at the time Detective Hunt prepared his affidavit. As the Supreme Court has explicitly held: "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Finally, Detective Hunt was not unreasonable in submitting his application for charges before interviewing Director Bush about the February 22, 2018, incident on the staircase and before reviewing her affidavit stating that Ms. Hill prevented Alexander from being injured. Not only was this incident just one of several incidents of concern to Detective Hunt at the time of his

---

[6] The portion of Detective Hunt's affidavit repeating Ms. Carullo's apparently false claim that Ms. Hill was fired as a result of the February 22, 2018, incident is not material to this probable cause analysis.

application, but the plaintiffs also fail to allege that he was aware of Director Bush ever authoring

such a document. *See Miller*, 475 F.3d at 630 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264

(4th Cir. 1991)) (It is "plain that an officer is not required to 'exhaust every potentially exculpatory

lead or resolve every doubt about a suspect's guilt before probable cause is established'").

> **b)  The Existence of Probable Cause Requires the Dismissal of Constitutional Claims**

Because this court finds that, as a matter of law, probable cause existed for Detective Hunt

to apply for charges and Ms. Hill's arrest, the Hills' Fourth Amendment claim (Count XIV) will

be dismissed as against all defendants. Similarly, as the complaint fails to allege any basis for

liability against Detective Hunt other than the allegedly improper application for charges and

invalid arrest warrant, the plaintiffs' other § 1983 claims (Counts XV and XVI) against the County

defendants will be dismissed in their entireties as lacking an underlying constitutional violation.[7]

Additionally, Counts XV and XVI, alleging violations of the Hills' Fifth and First Amendment

rights as guaranteed by the Fourteenth Amendment, respectively, will be dismissed against all

remaining defendants as insufficiently pled. These far-reaching and verbose claims are deficient

for want of any factual allegations to support the contention that any defendant violated Ms. Hill's

First Amendment rights. Nor, given the exercise of a valid warrant with probable cause, are there

allegations sufficient to support the argument that the defendants violated Ms. Hill's Fifth

Amendment rights by depriving her of any property interest or otherwise jeopardized her privilege

against self-incrimination.

---

[7] Moreover, the Hills' § 1983 claims against BCPD and Baltimore County fail as the Hills have not alleged any facts that give rise to municipal liability for an independent unconstitutional policy or custom. Such claims cannot be based merely upon the doctrine of *respondeat superior*. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)) ("We also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor").

The Hills' state constitutional claims subsequently fail, as the provisions under which they are alleged are construed *in pari materia* with their federal counterparts. *See, e.g., Dent v. Montgomery County Police Dept.*, 745 F. Supp. 2d 648, 661 (D. Md. 2010) (Claims brought under Articles 24 and 26 of the Maryland Constitution are interpreted *in pari materia* with their federal analogs, the Fourth and Fourteenth Amendments); *Marshall v. State*, 415 Md. 248, 259 (2010) (Article 22 of the Maryland Constitution generally is interpreted *in pari materia* with the Fifth Amendment); *Howard Cnty. Citizens for Open Gov't v. Howard Cnty. Bd. of Elections*, 201 Md. App. 605, 623 n.19 (2011) (citation omitted) (Article 40 of the Maryland Constitution is interpreted *in pari materia* with the First Amendment). As the Hills' federal constitutional claims will be dismissed, so too will their claims under the Maryland Declaration of Rights Article 24 (Count XI); Article 26 (Count XII); Articles 19, 24, 26, 40 (Count XIII),[8] Article 40 (Count XVII); and Article 22 (Count XVIII).

### c)  The Existence of Probable Cause Requires Dismissal of Other Claims

The finding of probable cause militates the dismissal of several of the Hills' additional claims against the county defendants.

#### i.  Battery

First, the Hills' battery claim fails, as Detective Hunt and the other BCPD officers who arrested Ms. Hill acted on a valid arrest warrant, granting them the privilege of arresting Ms. Hill without her consent. *See Williams v. Prince George's Cty.*, 112 Md. App. 526, 554 (1996) ("[B]attery (when the force used is not excessive) can only occur when there is no legal authority or justification for the arresting officer's actions"). As the complaint is devoid of any allegation

---

[8] "Article 19 of the Maryland Declaration of Rights does not necessarily support a private cause of action and monetary remedies. Article 19, rather, guarantees a citizen the opportunity to seek judicial redress of a wrong." *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486 n.27 (2014) (citing *Doe v. Doe*, 358 Md. 113, 127–28 (2000)).

that Detective Hunt used excessive force in arresting Ms. Hill or otherwise obviated this privilege, the complaint fails to plead a cognizable battery claim. Accordingly, the Hills' battery claim (Count I) will be dismissed.

        ii.      <u>False Imprisonment and False Arrest</u>

Second, the Hills' false arrest and false imprisonment claims similarly fail because legal justification existed for Ms. Hill's arrest. *Heron v. Strader*, 361 Md. 258, 264 (2000) (citations omitted) ("The elements of false arrest and false imprisonment are identical. Those elements are: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification"). The Hills' claims of false arrest (Count II) and false imprisonment (Count III) thus will be dismissed.

        iii.      <u>Malicious Prosecution</u>

Third, the Hills cannot meet the elements of a malicious prosecution claim (Count VI) under Maryland law. *See Heron*, 361 Md. at 264 (2000) (citing *DiPino v. Davis*, 354 Md. 18, 59 (1999); *Montgomery Ward v. Wilson*, 339 Md. 701, 714 (1995)) ("The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) *without probable cause*; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff") (emphasis added). The plaintiffs' malicious prosecution claim (Count VI) will be dismissed.

        iv.      <u>Invasion of Privacy</u>

Fourth, the Hills' three invasion of privacy claims (intrusion upon seclusion, unreasonable publicity, and false light) necessarily fail as against the state and county defendants because the warrant for Ms. Hill's arrest was proper.[9] The only basis for the allegation that the defendants

---

[9] The Hills brought their unreasonable publicity (Count VIII) and false light (Count IX) claims against all defendants, but only brought their intrusion into seclusion claim (Count VII) against the county defendants.

collectively violated Ms. Hills' privacy appears to be that Detective Hunt applied for the Statement of Charges using the information and professional opinions provided to him by DSS. The court has established that the pleadings do not sufficiently allege that Detective Hunt acted recklessly or with knowledge of any falsity when filing his application. As a social worker tasked with interviewing Ms. Carullo about her son's injuries, Ms. Randall is also effectively only alleged to have done her job. As for Ms. Cawthon and the State of Maryland, no supervisory liability attaches for Dr. Chudow's required reporting of her reasonable medical conclusions. Finally, the complaint is devoid of any claim that Parkville Nazarene made any statement whatsoever that could have put Ms. Hill in a false light or attracted unreasonable publicity.

Because the application for charges was proper, each of the three invasion of privacy torts is insufficiently pled. First, intrusion upon seclusion has been defined as "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard,* 130 Md. App. 67, 73 (2000). Suspected child abuse is not a private concern, and it is in the interest of the public and the state for officers to apply for charges when probable cause exists to arrest those who may have committed abuse or neglect of a minor. Second, the tort of unreasonable publicity is cognizable when one "'gives publicity to a matter concerning the private life of another' and 'the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Lindenmuth v. McCreer*, 233 Md. App. 343, 364 (2017) (quoting *Furman*, 130 Md. App. at 77). Again, as suspected child abuse is a legitimate public concern, the tort is inadequately pled. Third, to establish a successful claim for false light invasion of privacy, a plaintiff must prove that the defendant 1) gave "publicity to a matter concerning another that places the other before the public in a false light," 2) that "the false light in which the

other person was placed would be highly offensive to a reasonable person," and 3) that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell v. Peninsula Regional Medical Center*, 106 Md. App. 470, 513–14 (1995)). As the Hills fail to adequately allege that the defendants acted recklessly or with knowledge of falsity, the third element of a false light claim is not met. Accordingly, the invasion of privacy claims for intrusion into seclusion (Count VII), unreasonable publicity (Count VIII), and false light (Count IX) will be dismissed.

## II.   The Remaining Claims Fail to Survive the Defendants' Motions

### a)   Negligence

The defendants offer several reasons why the Hills' negligence claim (Count X) fails. Each will be addressed in turn.

Under Maryland law, a complaint alleging negligence must contain the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.*" Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 131–32 (2007) (quoting *Valentine v. On Target*, 353 Md. 544, 549 (1999)).

First, Detective Hunt, Ms. Cawthon, and Ms. Randall are entitled to public official immunity, as they are alleged to have acted within the scope of their respective duties, in discretionary capacities, and without malice. *See* Cts. & Jud. Proc. Art. § 5-522; *James v. Prince George's County*, 288 Md. 315, 323 (1980).[10] Investigation, report-writing, and filing for charges are all clearly discretionary, not ministerial, acts. *James*, 288 Md. at 327 ("An act falls within the

---

[10] The Hills appear to drop this claim with respect to all individual defendants in their response to the State defendants' motion to dismiss. (*See* ECF 47 at 8).

discretionary function of a public official if the decision which involves an exercise of his personal judgment also includes, to more than a minor degree, the manner in which the police power of the State should be utilized").

Second, Baltimore County, as the local government employer of Detective Hunt, is entitled to the same governmental immunity he is under the Local Government Tort Claims Act (LGTCA).[11] The LGTCA provides that:

> A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.

Md. Code Ann., Cts. & Jud. Proc. § 5-303(e). As Baltimore County's liability is premised exclusively on Detective Hunt's negligence, and the Hills offer no reason why the LGTCA's application of immunity should not apply to his employer, the claim will be dismissed against Baltimore County.

Third, the Hills contend that the State of Maryland owed a duty to them when investigating and deciding whether to charge Ms. Hill (*see* ECF 28 ¶ 233), but they provide no caselaw demonstrating that any such duty exists. Generally, the State owes a duty to an individual only when a statute has created an express or implied duty to protect a specific class of persons. *See Pulliam v. Motor Vehicle Admin.*, 181 Md. App. 144, 186-187 (2008); *see also Muthukumarana v. Montgomery County,* 370 Md. 447, 486 (2002) ("[W]hen a statute or common law imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the

---

[11] Detective Hunt's immediate employer, BCPD, is not an entity subject to suit. The Fourth Circuit has repeatedly held that, "absent a statutory or constitutional provision creating a government agency, an office or department bears no unique legal identity, and thus, it cannot be sued under Maryland law." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 393 (4th Cir. 2014) (citing *Boyer v. State*, 323 Md. 558, 594 (1991)); *see also Revene v. Charles County Com'rs*, 882 F.2d 870, 874 (4th Cir. 1999) (the Office of the Sheriff for Charles County, Md., was not a entity which could be sued separately from Charles County). All claims will be dismissed with respect to BCPD.

duty is not one enforceable in tort"). In instances of child abuse, any duty to verify information obtained during an investigation is only owed to the alleged victim of abuse or neglect. *Horridge v. St. Mary's County Dep't of Social Services*, 382 Md. 170, 191-93 (2004); *see also Hayes v. State*, 183 Md. App. 742, 746 (2009) (the statutory duty recognized in *Horridge* "runs to the children who are the subject of the reports and not to their parents"). Any duty the state owed in its investigation only extended to Alexander, and not to Ms. Hill, the subject of the investigation. As the Hills have failed to establish any duty to investigate owed to them by the State, the negligence claim will be dismissed against the State of Maryland.

Fourth, Parkville Nazarene contends that the Hills failed to properly plead the breach of any duty they owed to Ms. Hill. The amended complaint asserts twelve alleged breaches of duty on the part of all the defendants, and each involves the investigation, charging, and arrest of Ms. Hill. (ECF 28 ¶ 234). While the Hills' opposition brief suggests that Parkville Nazarene was under a duty not to lie or to otherwise correct the lie of their former employee, Alexander's mother Ms. Carullo, an allegation that Parkville Nazarene breached a duty to the Hills by failing to correct such a lie simply does not appear on the face of the amended complaint. Nor does the complaint contain any allegation that Parkville Nazarene was involved in the investigation, charging, or arrest of Ms. Hill. Accordingly, the court finds no need to address whether this duty even exists in Maryland, as the Hills have failed to state a claim of negligence against Parkville Nazarene. Thus, the claim will be dismissed.

### a)  Gross Negligence

The Hills bring their claim of gross negligence (Count V) against county defendants, Ms. Cawthon, and Ms. Randall, but not the State of Maryland. (*See* ECF 47 at 5 n.2).

Gross negligence is considered the "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Stracke v. Est. of Butler*, 465 Md. 407, 420-21 (2019) (internal quotation omitted). As the court has already concluded that Detective Hunt acted with appropriate diligence upon probable cause, there are no factual allegations in the complaint sufficient to conclude that Detective Hunt acted wantonly and recklessly in disregard of Ms. Hill's rights. Similarly, allegations of malice against Ms. Cawthon and Ms. Randall are conclusory and insufficient to support this claim. While Ms. Cawthon and Ms. Randall could reasonably expect that law enforcement would use the report they produced and approved to eventually charge and arrest a suspect, the complaint fails to articulate with particularity how they were grossly negligent in completing the duties inherent in their jobs. (*See generally* ECF 28),[12] Therefore, the gross negligence claim will be dismissed against Detective Hunt, Ms. Cawthon, and Ms. Randall. Additionally, Baltimore County is not vicariously liable because the claim is not properly pled against Detective Hunt; the claim will be dismissed against the County. Finally, as discussed above, the complaint failed to allege any way in which Parkville Nazarene was involved in the criminal investigation and arrest of Ms. Hill, or any other actions that breached a duty the organization owed to the Hills. The claim will be dismissed against Parkville Nazarene.

### a) Intentional Infliction of Emotional Distress

---

[12] The only allegation of any impropriety on the part of Ms. Randall was that she failed to independently verify statements made by Parkville Nazarene about Ms. Hill's termination (ECF 28 ¶ 145). This, however, is largely immaterial to her report's findings, which the Hills admit additionally relied on evidence of the physical marks on Alexander. (*Id.* ¶¶ 37-40). The complaint does not contain a single detail regarding how Ms. Cawthon's conduct could be construed as grossly negligent.

16

Next, the Hills 's claim that each of the defendants is liable for the intentional infliction of emotional distress ("IIED," Count IV) is insufficiently pled. Under Maryland law, to prevail on a claim for intentional infliction of emotional distress a plaintiff must establish: (1) the defendant engaged in intentional or reckless conduct; (2) the conduct was extreme or outrageous; (3) the wrongful conduct caused the emotional distress; and (4) the emotional distress was severe. *Batson v. Shiflett*, 325 Md. 684, 733 (1992); *see also Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 528 (D. Md. 2016). This cause of action "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct," *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). Claims for intentional infliction of emotional distress are "rarely viable." *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011). Indeed, "extreme or outrageous" conduct is only that which exceeds "all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater v. Guttman*, 194 Md. App. 431, 448 (2010).

As discussed above, nothing in the complaint suggests that any of the State defendants, County defendants, or Parkville Nazarene has acted intentionally or recklessly, let alone with the type of opprobrious or atrocious behavior sufficient to meet the elements of this tort. While it is certainly unfortunate that Ms. Hill was arrested for charges which were later dropped, the Hills' IIED claim must be dismissed.

### a) Aiding and Abetting and Civil Conspiracy

Aiding and Abetting (Count XIX) and Civil Conspiracy (Count XX) are not independent torts in Maryland. "Tort liability for aiding and abetting can only exist where someone has committed the actual tort" because there must "exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Alleco Inc. v. Harry & Jeanette Weinberg Foundation*,

340 Md. 176, 189, 201 (1995). As all possible claims that could serve as the underlying tort have been dismissed, there is no basis for a finding of liability for any defendant for aiding and abetting.

Likewise, the plaintiffs' Civil Conspiracy claim cannot stand as an independent tort and will be dismissed. "Under Maryland law, civil conspiracy provides a means of holding a co-conspirator liable for acts committed in furtherance of the conspiracy by another member. . . the agreement itself is not actionable; instead, the underlying tort is considered to be the act which caused harm. Therefore, civil conspiracy will not support a separate cause of action in the absence of "other tortious injury to the plaintiff." *Mackey v. Compass Marketing, Inc.,* 391 Md. 117, 128–129 (2006)).

Counts IX and XX of the complaint will thus be dismissed.

## CONCLUSION

For the reasons stated above, the court will grant each of the defendant's motions to dismiss. As Ms. Carullo has not been served, the court will dismiss all claims against her without prejudice. A separate Order follows.

   3/9/2022                   /S/
Date                                       Catherine C. Blake
                                         United States District Judge